# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MERCEDES L. NORRIS,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-587

Litkovitz, M.J.

Plaintiff Mercedes L. Norris brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI) for the period prior to April 10, 2014 and granting her

applications for the period starting on that date. (Tr. 1019-1046). This matter is before the

Court on plaintiff's Statement of Errors (Doc. 5), the Commissioner's response (Doc. 17), and

plaintiff's reply (Doc. 18). This matter is also before the Court on the Commissioner's motion

for voluntary remand (Doc. 13), plaintiff's response in opposition (Doc. 14), and the

Commissioner's reply (Doc. 15).

## I. Procedural Background of Administrative Proceedings

Plaintiff filed concurrent DIB and SSI applications in January 2010. (Tr. 230-38). A

hearing before an Administrative Law Judge (ALJ) was held on August 4, 2011. (Tr. 1047-68).

The ALJ issued a decision denying the applications on September 22, 2011. (Tr. 97-115). The

Appeals Council remanded the applications by Order dated March 14, 2013. (Tr. 116-20). A

second ALJ hearing was held on August 27, 2013. (Tr. 1069-96). The ALJ issued a decision on

February 12, 2014, finding that plaintiff was not disabled from December 31, 2009 through the date of the ALJ's decision. (Tr. 1163-90). Plaintiff filed an appeal with this Court, and the undersigned issued a Report and Recommendation which the District Judge adopted on June 13, 2016. *Norris v. Comm'r of Soc. Sec.*, No. 1:15-cv-362, 2016 WL 2636310 (S.D. Ohio May 6, 2016), *adopted*, 2016 WL 3228399 (S.D. Ohio June 13, 2016); *See* Tr. 1127-57. The Court found that not all essential factual issues had been resolved and on remand the ALJ should (1) reassess plaintiff's residual functional capacity (RFC), giving appropriate weight to the opinions of treating physician Dr. Rosa Robles, M.D., concerning plaintiff's fibromyalgia and obesity; (2) reassess plaintiff's credibility, subjective complaints and pain in light of the nature of fibromyalgia, Dr. Robles's opinions, and the complete medical record concerning plaintiff's fibromyalgia, obesity, and mental impairments; and (3) pose an appropriate hypothetical(s) to a vocational expert (VE) after completing a proper assessment of plaintiff's RFC that accounts for all of her limitations during the relevant period. *Norris*, 2016 WL 2636310, at *14; Tr. 1155. Following remand, a third ALJ hearing was held on February 6, 2017.[1] (Tr. 1097-1126). Plaintiff appeared at the hearing with counsel, and she and a vocational expert (VE) testified at the hearing. (Tr. 1097-1126). ALJ Gregory Kenyon issued a decision on May 19, 2017 finding that plaintiff was not disabled prior to April 10, 2014 but became disabled on that date and continued to be disabled through the date of the ALJ's decision. (Tr. 1019-1046). The Appeals Council denied review, making ALJ Kenyon's decision the final decision of the Commissioner. (Tr. 1-5). Plaintiff now appeals ALJ Kenyon's decision to this Court.

---

[1] A new claim for benefits that plaintiff had filed on June 30, 2015 - after the original claim but before the Court's remand Order- was consolidated with the prior claim. (*See* Tr. 1023, citing Tr. 1158-1162).

## II. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

## III. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] met the insured status requirements of the Social Security Act through December 31, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, December 31, 2009, the [plaintiff] has had the following severe impairments: obesity, fibromyalgia, cervical degenerative disc disease, mild lumbosacral degenerative disc disease, asthma, residuals of gastric bypass surgery, obstructive sleep apnea, a right rotator cuff tear, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, December 31, 2009, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that since December 31, 2009, the [plaintiff] has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes and scaffolds; (3) no working around hazards, such as unprotected heights or dangerous machinery; (4) occasional overhead reaching; (5) no concentrated exposure to temperature extremes or respiratory irritants; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with coworkers, supervisors and members of the general public; (8) no fast-paced production work or jobs that involve strict production quotas; and (9) limited to performing jobs in a relatively static work environment, in which there is very little, if any, change in the job duties or the work routine from one day to the next.

6. Since December 31, 2009, the [plaintiff] has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. Prior to the established onset date, the [plaintiff] was an individual closely approaching advanced age. On April 10, 2014, the [plaintiff's] age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Prior to April 10, 2014, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills. Beginning on April 10, 2014, the [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to April 10, 2014, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience and [RFC], there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).[3]

11. Beginning on April 10, 2014, the date the [plaintiff]'s age category changed, considering the [plaintiff]'s age, education, work experience and [RFC], there are no jobs that exist in significant numbers in the national economy that the [plaintiff] could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).[4]

---

[2] Plaintiff's past relevant work was as a buyer and paralegal, both skilled, light exertion positions, and legal secretary, a skilled, sedentary exertion position. (Tr. 1035).

[3] The ALJ relied on the VE's testimony to find that prior to April 10, 2014, plaintiff would be able to perform the requirements of 2.5 million light jobs nationally and 45,000 regionally, including representative occupations such as mail clerk (2,000 jobs regionally, 10,000 jobs nationally), copy machine operator (1,200 jobs regionally, 55,000 jobs nationally), and office helper (3,000 jobs regionally, 100,000 jobs nationally). (Tr. 1036, 1121-22).

[4] The ALJ found that as of that date, plaintiff was disabled under Medical-Vocational Rule 202.06, which "directs a finding of disabled if the claimant falls within the 'advanced age' category and is limited to light work." *Jones v. Comm'r of Soc. Sec.*, 142 F. Supp.3d 608, 619 (S.D. Ohio 2015) (quoting *Maher v. Comm'r of Soc. Sec.*, No. 1:11-cv-1330, 2012 WL 3258099, at *8 (N.D. Ohio Aug. 8, 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.06)).

12. The [plaintiff] was not disabled prior to April 10, 2014, but became disabled on that date and has continued to be disabled through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 1025-36).

## IV. Procedural History of Current District Court Proceedings

On September 7, 2017, plaintiff filed a complaint challenging the Commissioner's final decision denying her applications for DIB and SSI for the period December 2009 until March 2014. (Doc. 1). Plaintiff alleges the following assignments of error: (1) the ALJ did not properly consider plaintiff's fibromyalgia; (2) the ALJ did not consider plaintiff's obesity in assessing whether she could perform the standing and walking requirements of light work; (3) the ALJ erred by failing to properly weigh the opinion of her treating physician, Dr. Robles; (4) the ALJ erred in assessing plaintiff's credibility; and (5) the ALJ did not account for all of the functional limitations caused by plaintiff's mental impairments. (Docs. 5, 18).

On March 16, 2018, after requesting and receiving two extensions of time, the Commissioner filed a unilateral motion for voluntary remand under Sentence Four of 42 U.S.C. § 405(g). (Doc. 13). The Commissioner states that the only issue presented by this appeal is whether the case should be reversed and remanded for an award of benefits or reversed and remanded for further administrative proceedings. The Commissioner concedes that the ALJ's decision finding that plaintiff's disability began on April 10, 2014, and awarding disability benefits as of that date, was not properly made. However, the Commissioner believes the appropriate remedy is to remand the case for further administrative proceedings and a new decision because proof of disability is not strong or overwhelming, there is evidence in the record which supports a finding that plaintiff's impairments were not disabling during the period at issue, and significant factual issues remain for

the ALJ to resolve concerning the credibility of plaintiff's subjective complaints. (Doc. 13 at 2; *see Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994)). The Commissioner asserts that on remand, the ALJ would give plaintiff the opportunity for a supplemental hearing, further evaluate the treating physician's opinions and plaintiff's subjective complaints, and issue a new decision as to whether plaintiff was disabled before April 10, 2014. (Docs. 13, 15).

Plaintiff opposes defendant's motion to remand. (Doc. 14). Plaintiff contends she applied for disability benefits in January 2010 (Tr. 230-38) and she has had three administrative hearings to date; a remand for yet another hearing would be futile; and proof of disability for the period in issue is strong. (Doc. 14 at 1-2). Plaintiff seeks a reversal and remand for an immediate award of benefits based on a disability onset date of December 2009.

In light of plaintiff's opposition to the Commissioner's motion to remand, and in the interest of judicial economy, the Court stayed its ruling on the Commissioner's motion for voluntary remand and ordered the Commissioner to file a response on the merits to plaintiff's statement of errors. (Doc. 16). The Court finds it is appropriate to consider the merits of plaintiff's appeal of the Commissioner's decision establishing the disability onset date as April 10, 2014 and denying her applications for the period prior to that date. As set forth in the Order staying the ruling on the motion for voluntary remand, plaintiff's disability claims have been pending for more than eight years. The Court has ordered an administrative remand previously, and three administrative hearings have been held. Because the Commissioner concedes that an ALJ failed to properly decide plaintiff's claims yet again on remand from this Court, it would not be fair to plaintiff to further delay resolution of her claims by remanding this matter for a fourth ALJ hearing and a third ALJ decision without considering the merits of her appeal. The proper and just course is for the Court to consider the merits of plaintiff's appeal pursuant to Sentence Four of § 405(g) and deny

the Commissioner's motion for voluntary remand.  (Doc. 16).

## V.  Judicial Analysis

### A.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**B. Specific Errors**

**1. Weight to the treating physician (third assignment of error)**

As her third assignment of error, plaintiff alleges the ALJ erred by first, failing to give the opinion of Dr. Robles, plaintiff's treating physician, controlling weight and second, failing to give good reasons for affording the opinion reduced weight. (Docs. 5, 18). Plaintiff alleges that in order to adhere to the Court's prior decision finding Dr. Robles's opinion was consistent with the evidence of record, the ALJ was required to give Dr. Robles's functional capacity assessment "controlling weight" or the "most weight" under 20 C.F.R. §§ 404.1527, 416.927 and Soc. Sec. Ruling 96-2p (1996). (Doc. 5 at 4-5). Plaintiff argues that the ALJ erred by failing to do so and by failing to give "good reasons" for rejecting Dr. Robles's assessment of debilitating limitations. Plaintiff alleges that in evaluating the medical opinions of record, the ALJ applied a more rigorous standard of review to her treating physician's medical opinion than was applied to the opinions of the non-examining state agency physicians. Plaintiff contends that the ALJ improperly discounted Dr. Robles's opinion based on her area of practice while failing to consider the state agency physicians' areas of specialization; gave greater weight to the opinions of the state agency physicians despite their erroneous reliance on a lack of objective findings to render their assessments, which is error when the impairment in question is fibromyalgia (*Id*. at 5, citing *Rogers v. Comm'r*, 486 F.3d 234, 243 (6th Cir. 2007)); and credited the state agency physicians' June and September 2010 opinions over Dr. Robles's later opinion, even though the reviewing physicians were not able to review the complete medical record.

The Commissioner concedes that the ALJ made mistakes in weighing Dr. Robles's opinion and that the ALJ erred by subjecting the treating physician's opinion to a stricter standard of review than the ALJ applied to the non-examining physicians' opinions. (Doc. 17 at 2-4). The

Commissioner argues the evidence nonetheless is not so overwhelming that it requires a remand for the payment of benefits. (*Id.*). The Commissioner suggests that plaintiff cannot rely on the Court's prior finding that Dr. Robles's opinion was consistent with the record evidence because first, ALJ Kenyon relied on different evidence related to plaintiff's part-time work as a driver to discount Dr. Robles's opinion in 2017, and second, ALJ Kenyon gave different reasons than ALJ Lombardo gave in 2014 for discounting Dr. Robles's opinion. (*Id.* at 2-3, citing Tr. 1033-34, 26). The Commissioner also contends that the ALJ did not err by omitting to mention that Dr. Robles's opinion post-dated the reviewing physicians' opinions.

    *i. Treating physician standard*

    It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ." *Rogers*, 486 F.3d at 242-43 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996)[5]); *Wilson*, 378 F.3d at 544). The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone. . . . " *Rogers*, 486 F.3d at 242.

    A treating source's medical opinion must be given controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. §§

---

[5] "Effective March 27, 2017, SSR 96-2p was rescinded when the Social Security Administration published final rules that revised the rules and regulations applicable to the evaluation of medical evidence for claims filed on or after that date. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, 2017 WL 168819, at *5844-45, 5869, 5880." *Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 437 n.9 (6th Cir. 2018). Since plaintiff's claim was filed prior to March 27, 2017, SSR 96-2p applies to this case.

404.1527(c)(2), 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544. *See also Blakley*, 581 F.3d at 408 ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. §§ 404.1527(c), 416.927(c)) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4). In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ's reasons must be supported by the evidence in the case record and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of her case, especially "where a claimant knows that h[er] physician has deemed h[er] disabled," and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544. "A failure to follow the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Rogers*, 486 F.3d at 243).

Opinions from non-treating and non-examining sources are never assessed for "controlling

weight." *Gayheart*, 710 F.3d at 376. A non-treating source's opinion is weighed based on the examining relationship or lack of one, medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. *Id.*; 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the medical opinions of treating and other examining sources. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Under the Social Security regulations, the opinions of state agency medical consultants may be entitled to significant weight where they are supported by record evidence. *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 713 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(f), 416.927(f).

*ii. Dr. Robles's treatment records and medical opinions*

The undersigned summarized the treatment plaintiff received from primary care physician Dr. Robles in the prior Report and Recommendation dated May 6, 2016, as follows:

> Plaintiff received treatment from [Dr.] Robles [] from September 2004 through March 2010. (Tr. 489-548). Dr. Robles diagnosed fibromyalgia in September 2004, noting positive trigger points over plaintiff's back and upper extremities. (Tr. 533). Dr. Robles prescribed Cymbalta for plaintiff's fibromyalgia in October 2005. (Tr. 524). In April 2007, Dr. Robles noted that plaintiff was complaining of diffuse joint pains and had gained 31 pounds in 1 month. (Tr. 508). Dr. Robles continued plaintiff on Cymbalta and trazodone for her fibromyalgia. (*Id.*). In July 2007, Dr. Robles continued plaintiff on her current medications, noting that her fibromyalgia and asthma were stable. (Tr. 503). In December 2007, Dr. Robles noted plaintiff's complaints of pain all over. (Tr. 499). She prescribed Lyrica for plaintiff's fibromyalgia. (*Id*). Later that month, Dr. Robles noted that plaintiff's fibromyalgia was better with an increased dosage of Lyrica. (Tr. 498). In March 2008, Dr. Robles noted the following positive trigger points: "subscapular, arms (deltoids), thighs, back, etc." (Tr. 497). Dr. Robles indicated that plaintiff's complaint of increased fatigue was likely secondary to a fibromyalgia flare up. (*Id.*). In July 2008, Dr. Robles noted that plaintiff's fibromyalgia was better with meloxicam (a nonsteroidal anti-inflammatory drug). (Tr. 496). In February 2010, Dr. Robles

prescribed Zoloft and Savella for plaintiff's fibromyalgia. (Tr. 493). In March
2010, plaintiff's BMI was 51. (Tr. 492). Dr. Robles noted that plaintiff's
fibromyalgia responded to Savella and she prescribed Symbicort for plaintiff's
asthma. (*Id.*).

*Norris*, 2016 WL 2636310, at *5. Dr. Robles gave a medical opinion after plaintiff's medical

appointment in March 2010, which was summarized in the prior Report and Recommendation:

> Dr. Robles reported plaintiff's diagnoses as major depression, fibromyalgia, fatigue,
> allergic asthma, gastroesophageal reflux disease ("GERD"), panic disorder, and
> arthritis involving mainly back problems. (Tr. 490). Dr. Robles also indicated that
> plaintiff was morbidly obese and was very short of breath with mild exertion.
> Further, Dr. Robles indicated that plaintiff had difficulty concentrating and felt
> fatigued. (*Id.*). Dr. Robles indicated that plaintiff's medications provided some
> relief but that her conditions were not controlled. (Tr. 491). As to work limitations,
> Dr. Robles opined that plaintiff was unable to concentrate, follow directions, or keep
> on task. Further, plaintiff was unable to sit or walk for 30 minutes at a time due to
> joint pains. (*Id.*).

*Id.* at *5. Dr. Robles also completed a functional capacity evaluation in January 2011 (Tr. 728-31),

assessing plaintiff's functional limitations as follows:

> Dr. Robles indicated that during an eight-hour workday, plaintiff could sit for one
> hour, could stand or walk for zero hours, must lie down for two hours, and must
> elevate her legs for two hours. (Tr. 728). Dr. Robles opined that during an eight-
> hour workday, plaintiff could lift up to five pounds for eight hours, six to ten pounds
> for six hours, 11 to 15 pounds for three hours, and 15 to 20 pounds for one hour.
> Further, plaintiff could carry up to five pounds for six hours, six to ten pounds for
> four hours, 11 to 15 pounds for two hours, and 15 to 20 pounds for zero hours. (*Id.*).
> Plaintiff could reach for three hours, handle for five hours, and finger for six hours.
> (Tr. 729). Dr. Robles opined that in a workday, plaintiff could stoop for 30 minutes,
> kneel for 45 minutes, and crouch for 30 minutes. (Tr. 730). Dr. Robles stated that
> plaintiff had continuous back pain and was unable to flex or extend her neck and
> arms. (*Id.*). Dr. Robles concluded that plaintiff would be absent more than four
> days per month because of her conditions or treatment. (Tr. 731).

*Norris*, 2016 WL 2636310, at *5.

### iii. The ALJ improperly weighed Dr. Robles' opinions

In the prior Report and Recommendation, the undersigned found that the ALJ had

improperly weighed Dr. Robles's opinions in light of the supporting treatment records and the

ALJ's failure to properly consider the effects of plaintiff's morbid obesity in rejecting Dr. Robles's opinions. *Id.*, at *7 (citing Tr. 491, 728-31). In addition, the undersigned found that the ALJ did not give "good reasons" for rejecting the opinions of plaintiff's treating physician and did not properly consider the regulatory factors, under which Dr. Robles's opinions were entitled to "significant, if not controlling, weight." *Id*, at *8-9. The ALJ instead improperly focused on (1) the lack of objective evidence to support Dr. Robles's opinions, which was not an appropriate consideration in the case of a plaintiff with fibromyalgia, and (2) "plaintiff's ability to clean her garage and work with pictures," which the ALJ found "belie[d] the extent of limitation described by Dr. Robles." *Id.*, at *8. The ALJ also did not properly consider Dr. Robles's longstanding treating relationship with plaintiff and frequent examinations in contrast to the non-examining physicians, who reviewed only a portion of plaintiff's records; the consistency between Dr. Robles's opinions and the record as a whole; and the fact that Dr. Robles's opinion was supported by the medical evidence. *Id.*, at *9.

The undersigned found that the ALJ instead improperly gave great weight to the June and September 2010 opinions of the non-examining state agency physicians, Dr. Dimitri Teague, M.D. (Tr. 618-25) and Dr. Elizabeth Das, M.D. (Tr. 727), who opined that plaintiff was capable of light work, even though neither Dr. Teague nor Dr. Das "are treating physicians, a fact of special significance given the unique nature of fibromyalgia," *Rogers,* 486 F.3d at 245; neither of them performed a physical exam, while treating physician Dr. Robles and physicians at University Hospital, who performed frequent examinations during the relevant period, rendered opinions that could support a finding that plaintiff "would be unable to maintain full-time employment" (Tr. 26; *see also* Tr. 490-91, 653-54, 728-31); and the state agency physicians did not have all of the records from the relevant period to review, including the records of University Hospital and plaintiff's new

primary care physician as of June 2011, Dr. Madhu Kosaraju, M.D., showing plaintiff's

fibromyalgia was a problem consistently noted and treated by multiple treating sources (Tr. 619-24,

727); *see also Rogers,* 486 F.3d at 245 & n.4 (noting the "importance of a non-examining source

having a complete medical snapshot when reviewing a claimant's file"). *Id*, at \*8. Therefore,

substantial evidence did not support the ALJ's decision to give great weight to the opinions of the

non-examining sources. *Id*., at \*9.

    As the Commissioner concedes, ALJ Kenyon repeated many of these same errors when

evaluating Dr. Robles's opinion on remand. The ALJ correctly acknowledged that a treating

physician's opinion must be given controlling weight if the opinion is "well supported and not

inconsistent with the other substantial evidence in the record." (Tr. 1033). However, the ALJ did

not actually apply the controlling weight standard. The ALJ did not evaluate whether Dr. Robles's

opinion should be given controlling weight because (1) the opinion was well-supported by her own

treatment records, and (2) her opinion was consistent with the other substantial evidence of record.

(*See* Tr. 1033). The ALJ instead merged the "controlling weight" analysis with consideration of

the regulatory factors under §§ 404.1527, 416.927 and decided that the weight of the relevant

regulatory factors supported the conclusion that Dr. Robles's opinion was "not entitled to

controlling or deferential weight under the regulations, as they are not fully supported by the

record." (Tr. 1033). However, the ALJ not only neglected to assess Dr. Robles's opinion for

controlling weight, but he also failed to give "good reasons" that are supported by substantial

evidence for affording the assessment "little weight." (Tr. 1033-34).

    The regulatory factors the ALJ considered in evaluating Dr. Robles's opinion were: (1) Dr.

Robles's area of specialization under §§ 404.1527(c)(5), 416.927(c)(5); (2) the nature of the

treatment relationship under §§ 404.1527(c)(ii), 416.927(c)(ii), which the ALJ described as

treatment Dr. Robles provided primarily for "periodic, acute conditions" with no "comprehensive treatment plan" for plaintiff's fibromyalgia complaints; and (3) the lack of consistency with and supportability of the record under §§ 404.1527(c)(3), 416.927(c)(3). The ALJ specifically found that Dr. Robles's assessment restricting plaintiff to sitting for one hour, no standing or walking, and lying down for two hours during an 8-hour workday was not consistent with the "entirely conservative level of treatment plaintiff has received" and with the physical activities plaintiff performed in her current part-time job. (Tr. 1033).

The ALJ's findings do not support his decision to give Dr. Robles's opinion discounted weight. First, the ALJ discounted Dr. Robles's opinion because she is a "family doctor" and not a rheumatologist or other specialist with particularized training as to plaintiff's diffuse muscle and joint pain complaints. (Tr. 1033). The ALJ did not take into account that in her capacity as plaintiff's family physician, Dr. Robles saw plaintiff on a regular basis over the course of many years. Further, the ALJ discounted only the treating physician's assessment for this reason and did not consider this factor when assessing the opinions of the state agency physicians. The ALJ neglected to "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. §§ 404.1527(c), 416.927(c) as required by the regulations after declining to give Dr. Robles's opinion controlling weight. *Id.* (citing *Walton v. Comm'r of Soc. Sec.*, No. 97–2030, 187 F.3d 639, 1999 WL 506979, at *2 (6th Cir. June 7, 1999)).

Second, the ALJ discounted Dr. Robles's opinion because he found it was inconsistent with the "entirely conservative level of treatment" plaintiff has received. (Tr. 1034). The prior Report and Recommendation includes the following summary of plaintiff's course of treatment:

> As already noted, plaintiff was positive for focal points for tenderness at appointments with Dr. Robles in September 2004 and March 2008. (Tr. 497, 533). Dr. Robles noted that plaintiff was complaining of diffuse joint pains in April 2007 and of pain all over in December 2007. (Tr. 499). In March 2008, Dr. Robles noted increased fatigue secondary to fibromyalgia. (Tr. 497). In June 2010, plaintiff

16

reported pain throughout her body at University Hospital. (Tr. 658). Physical examination at University Hospital in December 2010 revealed multiple sites of muscle pain related to fibromyalgia. (Tr. 808). At a June 2011 appointment at University Hospital, plaintiff reported pain everywhere from fibromyalgia. (Tr. 817). Also in June 2011, plaintiff's new primary care physician, Madhu Kosaraju, M.D., noted that plaintiff's fibromyalgia had "been acting up lately [with] aches all over." (Tr. 740). Plaintiff reported increased muscle and joint pains for which medication did not help in August 2011. (Tr. 855).

Plaintiff's doctors also tried numerous medications in treating her fibromyalgia. Dr. Robles initially treated plaintiff's fibromyalgia with Cymbalta and trazodone. (*See* Tr. 508, 524). In July 2007, Dr. Robles noted that plaintiff's fibromyalgia was stable on her current medications. (Tr. 503). However, in December 2007, Dr. Robles began plaintiff on Lyrica, noting plaintiff's renewed complaints of diffuse pain. (Tr. 499). Later that month, Dr. Robles noted that plaintiff's fibromyalgia was better with an increased dosage of Lyrica. (Tr. 498). In July 2008, Dr. Robles noted that plaintiff's fibromyalgia was better with meloxicam. (Tr. 496). However, in February 2010, Dr. Robles switched plaintiff's fibromyalgia prescriptions to Zoloft and Savella. (Tr. 493). A month later, Dr. Robles noted that plaintiff's fibromyalgia had responded to Savella. (Tr. 492). In November 2010, Dr. Kosaraju also noted that Savella was helping with plaintiff's muscle pains. (Tr. 762). However, in June 2011, Dr. Kosaraju prescribed Lyrica because plaintiff's fibromyalgia had "been acting up lately [with] aches all over." (Tr. 740-41). In August 2011, Dr. Kosaraju increased plaintiff's Lyrica dosage from 50 milligrams once a day to 75 milligrams twice a day. (*See* Tr. 855-56). In January 2012, Dr. Kosaraju increased plaintiff's Lyrica dosage to 150 milligrams twice a day. (Tr. 848).

*Norris*, 2016 WL 2636310, at *7.

The undersigned concluded based on this history that "plaintiff's treatment records support Dr. Robles's opinions" that her "medications provided some relief but her condition was not controlled (*See* Tr. 491)"; the treatment records "could support Dr. Robles's opinions concerning the limitations that plaintiff's fibromyalgia pain could cause [] (*See* Tr. 491, 728-31)"; and the treatment records "do not support the ALJ's finding that Dr. Robles's opinions were not 'consistent with other substantial evidence in the case record.' (Tr. 26)." *Norris*, 2016 WL 2636310, at *7. Neither the ALJ nor the Commissioner has cited any medical or other evidence that suggests the Court should reexamine these prior findings. The Commissioner relies on information relating to plaintiff's part-time job as a driver for 15 hours each week, which was added to the record since the

last Court decision, to argue that ALJ Kenyon properly found Dr. Robles's opinion to be inconsistent with other substantial evidence of record. ALJ Kenyon determined that plaintiff's part-time work required physical activity that was inconsistent with the functional restrictions Dr. Robles had assessed six years before plaintiff started working. (Tr. 1034). Although the job appears to require an ability to sit more than one hour during an eight-hour workday, there is no indication it requires physical activity that is otherwise inconsistent with the functional limitations Dr. Robles assessed, including standing and lifting limitations. Further, there is no indication that plaintiff's part-time work requirements are inconsistent with Dr. Robles's opinion that plaintiff would miss four days of work each month. Nor is plaintiff's ability to perform the physical functions of her part-time job consistent with the ability to perform light work as assessed by the state agency reviewing physicians, whose opinions the ALJ credited over the opinions of Dr. Robles's. Thus, considered in the context of the evidence as a whole, plaintiff's ability to work 15 hours a week is not sufficient to support the ALJ's decision to discount Dr. Robles's assessment and to give greater weight to the opinions of the state agency reviewing physicians.

Further, the ALJ erred in finding that Dr. Robles's opinion was not consistent with the other medical opinion evidence of record provided by the state agency reviewing physicians. (Tr. 1033-34). The ALJ reasoned:

> The supportability and consistency factors also bod[e] against giving great weight to Dr. Robles's assessments. She is the only physician who has precluded the [plaintiff] from performing full-time work of any nature and, as such, is not consistent with the other opinion evidence from the [state agency] reviewing physicians, who are familiar with the criteria applied by the Social Security Administration.

(Tr. 1034). By evaluating Dr. Robles's opinions in this manner, the ALJ turned the treating physician rule on its head. Under the rule, treating physicians "are entitled to greater deference because they 'are likely to be . . . most able to provide a detailed, longitudinal picture of [a

18

claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]'" *Woodcock*, 201 F. Supp.3d at 919 (citing 20 C.F.R. § 404.1527(c)(2)). The opinions of physicians who have not seen the claimant and have only reviewed the medical records are afforded the least deference. *Id.* (citing SSR 96-6p, 1996 WL 374180, at *2). The ALJ flipped the hierarchy of deference. The ALJ found that in the face of a conflict between the opinions of plaintiff's treating physicians and the opinions of the non-examining state agency physicians, the non-examining physicians' assessments were entitled to greater deference and "great weight" based solely on their familiarity with the SSA criteria. (Tr. 1034). Absent any other considerations, in the face of conflict, the ALJ should have instead deferred to plaintiff's treating physician based on her unique perspective gained from her long-term treatment relationship with plaintiff.

Finally, by applying the regulatory factors to Dr. Robles's opinion only and accepting the non-examining physicians' opinions based only on their knowledge of SSA criteria, the ALJ subjected Dr. Robles's opinion to a more rigorous standard of review than he applied to the opinions of the non-examining physicians. This is the precise opposite of what the regulations require. *See Woodcock v. Comm'r of Soc. Sec.*, 201 F. Supp.3d 912, 919 (S.D. Ohio 2016) ("The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker.") (citing *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013) (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Thus, the ALJ did not assess Dr. Robles's opinion for controlling weight or provide sufficient justification for the weight given to the opinions of plaintiff's treating physician. The ALJ's decision in this regard does not meet the requirements of 20 C.F.R. §§ 404.1527, 416.927.

The ALJ's decision is not supported by substantial evidence. *See Norris*, 2016 WL 2636310, at *9

(citing *Rogers*, 486 F.3d at 246) (citing *Wilson*, 378 F.3d at 544).

Rather than relying on Dr. Robles's opinion, the ALJ gave "great weight" to the non-

examining physicians' opinions finding that plaintiff was capable of light work. An ALJ is not

precluded from giving greater weight to the opinion of a state agency reviewing physician in

certain circumstances, such as when the "State agency medical . . . consultant's opinion is based on

a review of a complete case record that . . . provides more detailed and comprehensive information

than what was available to the individual's treating source." *Id.*, at *9 (citing *Blakley*, 581 F.3d at

409) (quoting SSR 96-6p, 1996 WL 374180, at *3). "However, where a non-examining source has

not reviewed a significant portion of the record and the ALJ fails to indicate that [he] has 'at least

considered [that] fact before giving greater weight' to the reviewing doctor's opinion, the ALJ's

decision cannot stand." *Id.* (quoting *Blakley*, 581 F.3d at 409) (internal quotation omitted)).

The Commissioner argues that the ALJ here considered the state agency physicians' opinion

and adopted additional restrictions against hazards, overhead reaching and pulmonary irritants, so

that the ALJ did not err by relying on their opinion. (Doc. 17 at 3, citing *McGrew v. Comm'r of

Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (ALJ did not err by relying on state agency

reviewing physician's opinions that were allegedly "out of date and did not account for changes in

[the plaintiff's] medical condition" where it was clear from the ALJ's decision that he considered

the medical examinations that occurred after the state agency physician's assessment and took into

account any relevant changes in the plaintiff's condition); *Kelly v. Comm'r of Soc. Sec.*, 314 F.

App'x 827, 831 (6th Cir. 2009) (mere fact of an inevitable gap between the date agency expert

reviews the record and gives her opinion and the date the ALJ issues a hearing decision does not

warrant expense and delay of a judicial remand "[a]bsent a clear showing that the new evidence

20

renders the prior opinion untenable"). However, as the undersigned found in the prior decision, neither Dr. Teague nor Dr. Das is a treating physician, "a fact of special significance given the unique nature of fibromyalgia" *Rogers*, 486, F.3d at 245; neither of them performed a physical exam, in contrast to treating and examining physicians at University Hospital who frequently examined plaintiff during the relevant period and found she would be unable to maintain full-time employment," Tr. 490-91, 653-54, 728-31; the reviewing physicians did not have many records from the relevant period, including records from University Hospital and Dr. Kosaraju, showing that plaintiff's fibromyalgia was a problem consistently noted and treated by multiple treating sources, *Rogers*, 486 F.3d at 245 & n.4; and the ALJ did not consider the extent to which the state agency reviewing doctors were familiar with the other information in the case record. *Id.* The ALJ's decision to credit their opinions over the opinions of Dr. Robles is not substantially supported.

Plaintiff's third assignment of error is sustained.

### 2. The ALJ's consideration of plaintiff's fibromyalgia and obesity (first and second assignments of error)

Plaintiff alleges as her first and second assignments of error that the ALJ erred in considering her fibromyalgia and obesity. (Doc. 5 at 3-4). In support of her claim, she relies on reports of fatigue in the record. (Tr. 55, 82, 355-56, 490-91, 559). Plaintiff alleges that fatigue and joint pain from fibromyalgia, coupled with the fatigue from obesity, would limit her to sedentary work at best. Plaintiff also argues that the ALJ failed to consider the impact of her obesity in combination with fibromyalgia and sleep apnea. Plaintiff notes that even though she underwent gastric bypass surgery, her body mass index (BMI) never went below 50. Plaintiff alleges that her morbid obesity and fatigue limit her to sedentary work and she is thus disabled under the "grid" (the medical-vocational guidelines), 20 C.F.R. Subpart P, Appendix II, § 200.00 et seq., at age 50.

The Commissioner argues that the ALJ properly considered plaintiff's complaints of fatigue and joint pain, which plaintiff did not always report. (Doc. 17 at 5-7). The Commissioner contends that the ALJ properly considered plaintiff's obesity and associated impairments and found that obesity, residuals of gastric bypass surgery and obstructive sleep apnea severely impacted her ability to work. The Commissioner contends that the ALJ's decision contains facts supporting a finding of non-disability despite plaintiff's obesity; the ALJ "mentioned" that plaintiff's fibromyalgia was "likely exacerbated by her obesity"; the ALJ found that even after her gastric bypass surgery her BMI was high; she is "considered obese and [obesity] could be expected to aggravate her other conditions"; and that Dr. Robles "noted that [plaintiff] was morbidly obese" and became "very short of breath with mild exertion." (*Id.* at 7).

The ALJ erred in evaluating plaintiff's fibromyalgia and the impact of obesity on her functioning. ALJ Kenyon found that plaintiff was diagnosed with fibromyalgia prior to the alleged onset date, but he stated she "only treated this condition with medications" prescribed by her treating primary care physician and there were "few objective findings and limited evidence of any significant limitations in physical functioning." (Tr. 1029). As was true of the prior ALJ decision, ALJ Kenyon's "fundamental misunderstanding of the nature of fibromyalgia" adversely impacted the soundness of ALJ Kenyon's decision. *Norris*, 2016 WL 2636310, at *6 (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 861 (6th Cir. 2011) (citing *Rogers*, 486 F.3d at 243). ALJ Kenyon improperly focused on objective indicators, which this Court previously noted "would not be expected in the typical case of fibromyalgia. Instead, 'unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.'" *Id.*, at *8 (citing *Rogers,* 486 F.3d at 243) (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (noting that objective tests are of little relevance in determining the

existence or severity of fibromyalgia)). "Rather, fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'" *Id.* at 244 (quoting *Preston*, 854 F.2d at 820). *See also Kalmbach,* 409 F. App'x at 861. Thus, the lack of objective evidence in the record does not constitute substantial evidence to support the ALJ's rejection of the opinions of Dr. Robles as to the limitations attributable to plaintiff's fibromyalgia. The ALJ also did not explain why attempts to treat plaintiff's fibromyalgia with several different medications detracted from the validity of Dr. Robles's assessment and plaintiff's credibility. *See O'Neal v. Comm'r of Soc. Sec.*, No. 1:10-cv-531, 2011 WL 4383724, at *18 (S.D. Ohio Aug. 24, 2011) (Report and Recommendation), *adopted,* 2011 WL 4383521 (S.D. Ohio Sept. 20, 2011) (fact that plaintiff took only Darvocet for her fibromyalgia and that she had not engaged in "treatment modalities that are characteristic of chronic pain patients [such as] ongoing physical therapy, injections, TENS unit [and] evaluation by numerous specialists" did "not detract from plaintiff's credibility" when considered in the context of the record as a whole; treatment records reflected plaintiff was prescribed "many other medications in an effort to treat her fibromyalgia pain"; and the ALJ did not cite to any evidence showing that "a TENS unit or injections are appropriate treatment modalities for fibromyalgia.").

The ALJ also repeated many of the same errors of the prior ALJ in evaluating plaintiff's obesity. ALJ Kenyon mentioned some of the evidence related to plaintiff's weight and BMI and found that plaintiff's "reported fibromyalgia pain and relatively mild asthma were likely exacerbated by her obesity." (Tr. 1030). He noted that she underwent gastric bypass surgery in May 2010 when she weighed 344 pounds, she lost approximately 50 pounds, but she gained most of the weight back and weighed 315 pounds at the time of the hearing. The ALJ found that "[w]ith a body mass index of 54.1 at [a] minimum, [plaintiff] is considered obese and that condition could

be expected to aggravate her other conditions." (*Id.*). However, the ALJ gave no indication that he actually took the impact of plaintiff's obesity into account as required under SSR 02-1P, 2002 WL 34686281 (Sept. 12, 2002), which provides "detailed guidance on how to assess obesity in conjunction with other impairments." *Norris*, 2016 WL 2636310, at *7 (quoting *Shilo v. Comm'r of Soc. Sec.*, 600 F. App'x 956, 959 (6th Cir. 2015) (citing *Norman v. Astrue*, 694 F. Supp.2d 738, 741-42 (N.D. Ohio 2010) ("this is more than a requirement that the ALJ mention the fact of obesity in passing. . . .")).

SSR 02-1P defines obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1P, 2002 WL 34686281 at *2. SSR 02-1P explains that there are three levels of obesity that correlate with BMI levels and the highest is Level III, which is a BMI equal to or greater than 40. SSR 02-1P, 2002 WL 34686281, at *2. Level III obesity is characterized as "'extreme' obesity and represent[s] the greatest risk for developing obesity-related impairments." *Id.* Obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." *Id.*, at *3. As an example, a claimant "with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." *Id.*, at *6. The ALJ must specifically take into account "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment," as well as how "fatigue may affect the individual's physical and mental ability to sustain work activity." *Id. See also Shilo*, 600 F. App'x at 959.

The Sixth Circuit has recognized that an ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Shilo,* 600 F. App'x at 959 (quoting *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009)).

"[Obesity] must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'" *Shilo*, 600 F. App'x at 959 (quoting SSR 02-1P, 2002 WL 34686281, at *1).

This Court's prior finding that the "the ALJ . . . failed to properly consider the effects of plaintiff's morbid obesity in rejecting Dr. Robles's opinions and formulating plaintiff's RFC" likewise applies to ALJ's Kenyon's subsequent decision. *Norris*, 2016 WL 2636310, at *7. The undersigned set forth the medical evidence related to plaintiff's morbid obesity and associated limitations in the prior Report and Recommendation as follows:

> Here, Dr. Robles noted in her March 2010 opinion that plaintiff was morbidly obese and was very short of breath with mild exertion. (Tr. 490). Dr. Robles further opined that plaintiff was unable to sit or walk for 30 minutes at a time due to joint pains. (Tr. 491). Dr. Robles's medical records also linked plaintiff's obesity to her other medical conditions. For example, in April 2007, Dr. Robles noted that plaintiff was complaining of diffuse joint pains and had gained 31 pounds in one month. (Tr. 508). Further, plaintiff consistently presented with a BMI well beyond the 40-BMI threshold for Level III obesity. *See* SSR 02-1P, 2002 WL 34686281, at *2. In March 2010, plaintiff's BMI was 51 (301 pounds). (Tr. 492). A physician at University Hospital confirmed plaintiff's diagnosis of morbid obesity and opined that her musculoskeletal conditions prevented her from standing for extended periods of time without pain. (Tr. 653-54). Dr. Kosaraju started plaintiff on medically supervised low calorie diets, but these were unsuccessful in reducing plaintiff's weight. (*See* Tr. 752-53, 762-63). By April 2012, plaintiff's BMI had increased to *59* (344 pounds). (Tr. 839). In May 2012, plaintiff underwent gastric bypass surgery. (*See* Tr. 837, 880). After this surgery, plaintiff initially lost some weight, resulting in a reduction of her BMI to 50.5 (294 pounds) in November 2012. (Tr. 831). However, by August 2013, plaintiff's BMI had increased to 54.9 (320 pounds). (Tr. 951).

*Norris*, 2016 WL 2636310, at *8 (emphasis in the original).

ALJ Kenyon took note of some of this evidence and concluded that plaintiff's obesity could be expected to aggravate her other conditions and likely exacerbated her fibromyalgia and asthma. (Tr. 1030). However, the ALJ did not provide any analysis to show that he took plaintiff's

"'disturbing' BMI into account in considering plaintiff's ability to stand, sit, walk, and 'perform routine movement and necessary physical activity within the work environment.'" *See Norris*, 2016 WL 2636310, at *8 (citing *Shiloh*, 600 F. App'x at 962) (the ALJ should have taken the plaintiff's obesity into account in considering these functional abilities); SSR 02-1P, 2002 WL 34686281, at *6. This was error. Dr. Robles's opinion as to the impact of plaintiff's obesity is consistent with the functional limitations the treating physician imposed and with the ALJ's finding as to the likely aggravating effects of plaintiff's obesity. Yet, there is no indication that the ALJ accounted for Dr. Robles's assessment that plaintiff was "morbidly obese and became very short of breath with mild exertion" and the other likely aggravating impacts of her obesity when fashioning the RFC and evaluating Dr. Robles's opinions. ALJ Kenyon's conclusory analysis of plaintiff's obesity is inadequate under SSR 02-1P, 2002 WL 34686281 and Sixth Circuit law. *See Norris*, 2016 WL 2636310, at *8 (ALJ Lombardo erred in evaluating plaintiff's obesity under *Shiloh,* 600 F. App'x at 962, in which the Sixth Circuit concluded that consideration of a claimant's obesity was inadequate because the ALJ "only observed the claimant's weight, listed obesity as a severe impairment, and made the 'bare statement' that 'obesity has been considered in combination with the back condition," and the ALJ did not consider the claimant's "ability to ambulate . . . in the context of Shilo's [BMI] - a disturbing 53.7 where the cut-off for Level III obesity is 40."). ALJ Kenyon's RFC finding and weighing of the medical opinion evidence are not substantially supported for this reason.

Plaintiff's first and second assignments of error are sustained.

### 3. The ALJ's assessment of plaintiff's credibility (fourth assignment of error)

Plaintiff alleges as her fourth assignment of error that the ALJ's assessment of the credibility of her subjective complaints of pain and physical limitations is not supported by

substantial evidence. (Doc. 5 at 7). Plaintiff alleges that her credibility is bolstered by (1) Dr. Robles's functional capacity assessment (Tr. 728-31) and supporting evidence that shows she suffers from fatigue caused by fibromyalgia, obesity and sleep apnea; (2) the strong medications she has taken for pain and fibromyalgia; (3) her unsuccessful attempts to obtain relief through exercise; (4) her willingness to undergo gastric bypass surgery in May 2012; and (5) her testimony as to her limitations (Tr. 49, 50, 53, 80). Plaintiff alleges that the ALJ's reasons for finding her not credible are not supported by the record, and the ALJ erred by failing to note that the state agency non-examining physicians improperly required objective evidence of fibromyalgia. (*Id.* at 7, citing Tr. 624). The Commissioner generally alleges in response that the ALJ was not required to rely on plaintiff's subjective allegations. (Doc. 17 at 8).

Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability. . . ." 42 U.S.C. § 423(d)(5)(A). Subjective complaints are evaluated under the standard set forth in *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. *Id.* at 853. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of the pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Id.*

In addition to the objective medical evidence, the Commissioner must consider the opinions and statements of the plaintiff's doctors. *Felisky v. Bowen*, 35 F.3d 1027, 1040 (6th Cir. 1994). Additional specific factors relevant to the plaintiff's allegations of pain include her daily activities; the location, duration, frequency and intensity of her pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication plaintiff takes to alleviate her

pain or other symptoms; treatment other than medication plaintiff has received for relief of her pain; and any measures the plaintiff uses to relieve her pain. *Id*. at 1039-40; 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ improperly discounted plaintiff's credibility on several grounds. The ALJ found there were few objective findings to support plaintiff's subjective allegations of significant limitations in physical functioning. (Tr. 1029). As explained in connection with plaintiff's first assignment of error, it was not proper for the ALJ to rely on normal physical examination findings to discount plaintiff's subjective allegations of pain and debilitating limitations stemming from fibromyalgia, which had been diagnosed through focal point testing as early as September 2004 and documented by subsequent testing. (*See supra*, pp. 22-23). Nor did the ALJ properly discount plaintiff's credibility based on the allegedly "limited and conservative treatment prior to April 10, 2014" which did not include physical therapy or treatment from a rheumatologist or pain management specialist. As outlined earlier in this decision, plaintiff's primary care physician "tried numerous medications in treating her fibromyalgia, including Cymbalta and trazodone (Tr. 508, 524), Lyrica (Tr. 499), meloxicam (Tr. 496), Zoloft and Savella (Tr. 493), and Lyrica again (Tr. 740-41), increasing the dose twice (Tr. 855-56, 848). (Tr. 1029). The ALJ has not cited evidence to show that physical therapy or treatment by a specialist was indicated for plaintiff and would have given plaintiff further relief. The ALJ's finding that the treatment plaintiff received prior to April 10, 2014 was consistent with an ability to perform a reduced range of light work is not substantially supported. The ALJ erred by discounting plaintiff's credibility on these grounds.

Plaintiff's fourth assignment of error is sustained.

**4. The ALJ's evaluation of plaintiff's mental impairments (fifth assignment of error)**

Plaintiff alleges as her fifth assignment of error that the ALJ erred in assessing the

functional limitations imposed by her depression. (Doc. 5 at 8). Plaintiff alleges that she noted in August 2013 that she "isolates and lacks desire to do things" (*Id.*, citing Tr. 969, 973), and she testified at the ALJ hearing that same month that she "had problems with people" and "was forgetful." (Tr. 48, 55-56). Plaintiff alleges these issues would cause "further work-related limitations" than ALJ Kenyon assessed in 2017. (Doc. 5 at 8). Plaintiff has not pointed to medical or other evidence that shows her mental impairments imposed functional limitations in addition to the several mental limitations the ALJ assessed in the RFC finding.[6]

Plaintiff's fifth assignment of error is overruled.

### 5. This matter is reversed and remanded for an award of benefits.

In a case such as this, where the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176 (citations omitted). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Id.* (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985); *see also Felisky*, 35 F.3d at 1041.

Here, proof of disability beginning December 31, 2009, the onset date alleged by plaintiff, is overwhelming and the evidence to the contrary is lacking in substance. Remand for further administrative proceedings would serve no purpose other than to cause additional delay in a case

---

[6] The mental functional limitations the ALJ assessed are: "(6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with coworkers, supervisors and members of the general public; (8) no fast-paced production work or jobs that involve strict production quotas; and (9) limited to performing jobs in a relatively static work environment, in which there is very little, if any, change in the job duties or the work routine from one day to the next." (Tr. 1028).

that has been pending for nearly nine years, has been the subject of three administrative hearings, and has already been remanded once by both the Appeals Council and by this Court. Twice the ALJ issued decisions denying plaintiff social security benefits before plaintiff filed her first appeal with this court. The case was remanded with specific instructions to the ALJ to reassess plaintiff's RFC while giving appropriate weight to Dr. Robles's opinions concerning plaintiff's fibromyalgia and obesity, and to reassess plaintiff's credibility, subjective complaints and pain in light of the nature of fibromyalgia and the evidence related to plaintiff's fibromyalgia and obesity. (Tr. 1155). A third hearing was held, a different ALJ issued a third decision, plaintiff was again denied benefits for a substantial portion of the period of alleged disability. Plaintiff once again sought review in this Court. The Commissioner admits that the ALJ again committed errors in evaluating plaintiff's fibromyalgia, considering the impact of her obesity, and weighing the medical opinions. The Commissioner now seeks a second remand order for a third opportunity to conduct the proper analysis of the evidence of record. A third bite at the apple is not appropriate as the instant record is fully developed, the record supports Dr. Robles's opinion of debilitating limitations, and remanding the matter for a fourth hearing before the ALJ would serve no purpose in light of the procedural history of this matter and the extensive proceedings that have already occurred. *See Jodrey v. Comm'r of Soc. Sec.,* No. 1:12-cv-725, 2013 WL 5981337, at \*22 (S.D. Ohio Nov. 12, 2013) (Report and Recommendation), *adopted,* 2013 WL 6632633 (S.D. Ohio Dec. 17, 2013) (citing *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")). *See also Lesmeister v. Barnhart,* 439 F.Supp.2d 1023, 1031 (C.D. Cal. 2006) (finding that reversal and remand for an immediate award of benefits was proper where the court had previously remanded the matter "to afford the Commissioner an opportunity to

address the onset date issue, but following remand, the ALJ failed to meaningfully comply with the Court's Order") (citing *Giampaoli v. Califano*, 628 F.2d 1190, 1196 (9th Cir. 1980); *Filocomo v. Chater*, 944 F. Supp. 165, 171 (E.D. N.Y. 1996) (court found reversal rather than another remand was the appropriate remedy when several years had passed since the plaintiff applied for benefits, the matter had previously been remanded to the Commissioner, the Commissioner had failed to follow the Court's directives to properly apply the treating physician rule, and the Commissioner had not obtained or relied on any evidence contrary to the treating physicians' opinions).  In light of the Commissioner's admitted failure to meaningfully comply with the Court's remand order, and the long delay that has resulted due to the Commissioner's repeated errors during the extensive administrative proceedings in this case to date, the Court remands this case for an immediate award of benefits for the period December 31, 2009 to April 10, 2014.

## IT IS THEREFORE ORDERED THAT:

1.      Defendant's motion for a voluntary remand (Doc. 13) is **DENIED**.

2.      The decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to

  Sentence Four of 42 U.S.C. § 405(g) for an award of benefits consistent with this opinion.

Date: _9/17/18_

         Karen L. Litkovitz
         United States Magistrate Judge